**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JACK RONALD SMITH, JR.** | § | **PLAINTIFF** |
| | § | |
| **v.** | § | **Civil Action No. 1:14cv26-HSO-RHW** |
| | § | |
| **CITY OF WIGGINS,** | § | |
| **MISSISSIPPI,** *et al.* | § | **DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER DENYING AS MOOT
DEFENDANTS' [42] MOTION TO STRIKE PLAINTIFF'S
SUPPLEMENTAL RESPONSE AND PLAINTIFF'S [43] MOTION
FOR LEAVE OF COURT TO ACCEPT PLAINTIFF'S SUPPLEMENTAL
RESPONSE; AND GRANTING IN PART AND DENYING IN PART
DEFENDANTS' [32] MOTION FOR SUMMARY JUDGMENT**

BEFORE THE COURT are the following Motions: (1) Defendants' Motion for

Summary Judgment [32]; (2) Defendants' Motion to Strike [42] Plaintiff's

Supplemental Response [41]; and (3) Plaintiff's Motion for Leave of Court [43] to

Accept Plaintiff's Supplemental Response [41]. These Motions are fully briefed.

Having considered the Motions, related pleadings, the record, and relevant legal

authorities, the Court is of the opinion that the Motion to Strike [42] and Motion for

Leave of Court [41] are moot, that the Motion for Summary Judgment [32] should

be granted in part and denied in part, and that Plaintiff's claims against

Defendants City of Wiggins, Mississippi, Richard Gulledge, Aaron Grob, and

Melanie Roe under federal and state law should be dismissed in their entirety.

Plaintiff's federal 42 U.S.C. § 1983 claims against Defendants Randy Vinson,

Michael Carter, and John Rhodes, in their official capacities only, should be

dismissed with prejudice, along with Plaintiff's state law claims against Defendants Randy Vinson, Michael Carter, and John Rhodes, in both their official and individual capacities.  Plaintiff's individual capacity claims against Defendants Randy Vinson, Michael Carter, and John Rhodes under federal law pursuant to 42 U.S.C. § 1983 will proceed.

## I. BACKGROUND

### A. Factual Background

This case arises out of an incident which occurred on January 22, 2013, "inside and outside the Municipal Courtroom of the City of Wiggins, Mississippi." Compl. [1] at 2.  Plaintiff Jack Ronald Smith, Jr. ("Plaintiff"), was convicted that day on various charges in the City of Wiggins Municipal Court and then arrested. At issue in this case is the force employed by City of Wiggins police officers in effectuating the arrest.

Plaintiff injured his right shoulder when he was 18 or 19 years old.  Dep. of Jack Smith, Jr. [37-1] at 15-17; Dep. of Cuppie Day [37-2] at 11.  Plaintiff describes his arm as "frozen" and keeps his arm in a medical-type sling.  Dep. of Jack Smith, Jr. [37-1] at 51.  Since his injury, Plaintiff has "[v]ery rarely" driven a vehicle and does not possess a driver's license.  *Id.* at 27.  However, on June 30, 2012, Plaintiff was arrested by Wiggins police for driving under the influence ("DUI"), driving without a driver's license, failing to have proof of insurance, failing to wear a seatbelt, and having an open container in the vehicle.  Dep. of Jack Smith, Jr. [37-1] at 21; Dep. of Cuppie Day [37-2] at 8-9.  The arresting officer, Defendant Wiggins

police officer Randy Vinson ("Vinson"), booked Plaintiff into the Stone County Jail. Dep. of Jack Smith, Jr. [37-1] at 19, 21, 23-24.

Plaintiff first appeared in court on these charges before Municipal Court Judge Courtney.  Dep. of Cuppie Day [37-2] at 31.[1]  According to Plaintiff's sister, Cuppie Day ("Day"), Judge Courtney asked Plaintiff "was he on any kind of medication that night."  *Id.* at 32.  When Plaintiff responded in the affirmative, Judge Courtney purportedly informed Plaintiff that he "cannot place a judgment against you, so, therefore I'm going to have to reschedule this."  *Id.*  As Plaintiff and Day exited the courtroom, Day testified that she told Plaintiff "to come on," to which Plaintiff responded to her "f[-expletive] you."  *Id.*  Police officers escorted Plaintiff back into the courtroom, where he was charged with contempt of court.  *Id.* at 33-34.  Day and her father apparently bailed Plaintiff out of jail.  *Id.* at 34.

Plaintiff appeared in Municipal Court, without an attorney, on January 22, 2013, before Municipal Court Judge Rath.  *Id.* at 34-37.  Judge Rath heard the driving-related charges as well as the contempt charge at the same time.  *Id.* at 40. A video, without any audio, of the courtroom proceedings that day has been conventionally filed as Exhibit "E" to Defendants' Motion for Summary Judgment [32] ("the Courtroom Video").

The Courtroom Video reflects that Plaintiff, followed by Day, entered the courtroom at 16:54:28 through a door on the right side of the screen.  Plaintiff's right arm was in a medical-type sling.  Plaintiff and Day sat in the courtroom

---

[1]  It is not clear from the record on what date Plaintiff appeared before Judge Courtney.

gallery.  At 16:56:41, Plaintiff approached and stood before the podium in the courtroom, and the court proceeding appeared to commence.

Two City of Wiggins Police Officers testified at the trial, followed by Day. Vinson testified about the traffic charges, followed by Defendant John Rhodes ("Rhodes"), who addressed Plaintiff's contempt charge.  Dep. of Cuppie Day [37-2] at 36, 40.  Day testified on her brother's behalf.  *Id.* at 40.  According to Plaintiff, at the end of the criminal proceedings, Judge Rath found him "guilty of all – of everything."  Dep. of Jack Smith, Jr. [37-1] at 33.  Judge Rath sentenced Plaintiff to "30 days of jail, 25 suspended and 5 to serve."  Dep. of Cuppie Day [37-2] at 54. According to Day, Plaintiff said to Judge Rath, "sir, this is not right.  He says, I'm not getting a fair trial.  He says, I've done [sic] told you repeatedly during this whole process that this is not a fair trial."  *Id.* at 55.  Plaintiff then expressed his desire to appeal the conviction.  *Id.*; Dep. of Jack Smith, Jr. [37-1] at 41.

Day testified that Judge Rath said, "I'm placing [Plaintiff] under arrest for five days."  Dep. of Cuppie Day [37-2] at 56.  According to Plaintiff, Judge Rath then said "arrest him."  Dep. of Jack Smith, Jr. [37-1] at 41.  Plaintiff claims that after he informed Judge Rath that he wanted to appeal, he asked, "how is this fair?," and that he remembers "talking back and forth with [Judge Rath]."  *Id.*  Vinson, Rhodes, and former Defendant Officer Douglas McBride ("McBride") then approached Plaintiff.  Dep. of Cuppie Day [37-2] at 56-58.

The Courtroom Video shows that Rhodes and McBride approach Plaintiff at 17:20:36, while he is standing at the podium.  Based upon the descriptions provided

by the parties during their depositions, it appears from the Courtroom Video that McBride grasps Plaintiff's left arm in an attempt to escort him away from the podium and out of the courtroom.  Vinson then opens the courtroom door for McBride and Plaintiff.

At 17:20:59, while Vinson holds the courtroom door open with his right hand, Vinson places his left hand on Plaintiff's right upper arm or shoulder and appears to attempt to guide Plaintiff out of the courtroom.  Plaintiff described Vinson's actions as "kind of like a death grip thing."  Dep. of Jack Smith, Jr. [37-1] at 42-43. According to Day, Vinson grabbed and pushed Plaintiff's right or "bad shoulder," which caused Plaintiff to cry out and drop down to the ground in pain.  Dep. of Cuppie Day [37-2] at 58-59.

The Courtroom Video shows Plaintiff pulling away from Vinson and then falling backwards onto the floor of the courtroom.  At 17:21:09, while Plaintiff is lying on the floor, McBride pulls upwards on Plaintiff's free, left arm while Vinson grips Plaintiff's right leg and another officer steps in through the courtroom doorway and grasps Plaintiff's left leg.  This third officer was apparently Sergeant Michael Carter ("Carter").  Carter's Statement [32-4] at 1.  Day testified that the officers held both of Plaintiff's legs and both of his arms, including his injured right arm.  Dep. of Cuppie Day [37-2] at 59.  Although the podium in the Courtroom Video blocks much of the view of Plaintiff while he was lying on the floor, it appears that Vinson, McBride, and Carter carry or drag Plaintiff out of the courtroom by Plaintiff's uninjured left arm and both legs.

-5-

The Courtroom Video shows Day exiting the courtroom at 17:21:20, followed by Rhodes.  Day remains visible on the Courtroom Video at times, standing outside the courtroom door.  What occurred outside the courtroom is not visible on the Courtroom Video.

Day relates that once she exited the courtroom into the hallway, she witnessed the following:

> They've got my brother and they are throwing him against the wall. They pick him up the first time underneath his arms.  One officer, which is Dr. [sic] McBride, and Randy Vinson and the other one, John Rhodes, slams him face forward on his right side against the wall.  And I'm not talking about taking your head and just shoving it.  I'm talking about slams his face into wall.
>
> *   *   *
>
> After--after they--after they done [sic] slammed him four times into the wall, he drops back down.  Randy [Vinson] takes his foot, gets on my brother's thigh and is sitting there pulling him while he's on his thigh.

*Id.* at 60-61.

Day began to film the activity taking place in the hallway using her cell phone (the "Cell Phone Video").  *Id.* at 61-62.  The Cell Phone Video was conventionally filed as Exhibit "G" to Defendants' Motion for Summary Judgment [32].

Day's Cell Phone Video begins with three officers standing around Plaintiff in the hallway outside the courtroom.  Plaintiff is sitting on the floor.  One officer kneels in front of Plaintiff, but the view from the camera is blocked by the other two officers.  The three officers then lift Plaintiff to his feet.  *See* Cell Phone Video. Day claims that Rhodes choked Plaintiff, picked Plaintiff up "by his throat," and

"slam[med Plaintiff] up against the wall, his head, and you can see the officer sitting there holding it shoving it into the wall." Dep. of Cuppie Day [37-2] at 62.

The Cell Phone Video shows that the officer who was previously kneeling presses his left hand into the back of Plaintiff's head and forces Plaintiff's head against the hallway wall, but this officer was clearly not Rhodes. At least during the Cell Phone Video, Rhodes remains in the foreground and does not physically touch Plaintiff. It appears from the other evidence presented that Day is referring to Carter, instead of Rhodes. This is largely consistent with Carter's Statement, which states that Carter

> neeled [sic] down by Smith and told him to stop screaming and crying and stand up, it was at that time Smith tried to head-butt Sgt. Carter. Sgt. Carter grabbed Smith under the jaw bone applying pressure to the hypoglossal nerve and stood him up to his feet and placed him against the wall.

Carter's Statement [32-4] at 1.

The Cell Phone Video shows McBride, Vinson, and Carter attempt to handcuff Plaintiff's free, left arm to his belt loop. Plaintiff asks the officers to "please stop doing what you're doing." One of the officers responds, "then stop resisting." Plaintiff insists, "I'm not resisting." Plaintiff appears to bend at the knees and waist as the officers attempt to handcuff his left arm. Plaintiff's right arm remains visible in front of Plaintiff's body, in the sling. Several other officers enter the hallway, some of whom temporarily block the camera's view.

Approximately one minute into the Cell Phone Video, an unknown officer instructs Day to "get out of here with that camera now." Day denies that she is

using the camera and then abruptly exits the building, at which point the Cell Phone Video ends.  *See* Cell Phone Video [32-7].

B.    Procedural Background

Plaintiff filed suit against Defendants City of Wiggins, Mississippi (the "City"), Vinson, McBride, Carter, Richard Gulledge ("Gulledge"), Aaron Grob ("Grob"),[2] Rhodes, and Melanie Roe ("Roe") on January 24, 2014.  Compl. [1] at 1. Upon Plaintiff's Motion [13], the Court dismissed the claims against McBride pursuant to an Order [14] entered on September 5, 2014.

The Complaint alleges that Defendants "used unnecessary and objectively unreasonable excessive force in violation of the Fourth and/or Fourteenth Amendments to the U.S. Constitution as prohibited by 42 U.S.C. § 1983 resulting directly in gross and grievous physical and mental injuries" to Plaintiff.  Compl. [1] at 14.  The Complaint also advances state law claims for assault and battery and for intentional infliction of emotional distress.  *Id*. at 17-24.

Defendants have filed a Motion for Summary Judgment [32] seeking dismissal of all claims asserted against them.  On July 23, 2015, Plaintiff filed a Response [37][3] and a Memorandum in Opposition [38] to Defendants' Motion [32]. On August 3, 2015, Defendants filed a Reply [40].  On August 10, 2015, Plaintiff

---

[2]  The Complaint identifies this Defendant as Aaron Grove.  However, the parties do not seem to dispute that the officer's correct surname is Grob.  *See, e.g.,* Defs.' Mot. for Summ. J. [32] at 1.

[3]  Plaintiff's original Response [36] was filed on July 22, 2015, without any exhibits. Plaintiff filed the identical document, with exhibits attached, the following day, *see* Resp. [37], along with a Memorandum [38].  The Court will reference the second-filed version of Plaintiff's Response [37] in resolving Defendants' Motion.

filed an unauthorized "Supplemental Response" [41].  Defendants have now moved [42] to strike this Supplemental Response, Mot. to Strike [42] at 1-2, and Plaintiff asks the Court to accept his Supplemental Response, or alternatively, to authorize its refiling, Mot. for Leave [43] at 1-2.  Both Defendants' Motion to Strike [42] and Plaintiff's Motion for Leave of Court [43] are fully briefed.

## II. <u>DISCUSSION</u>

A.   <u>The Capacity in Which Plaintiff has Sued the Individual Defendants</u>

The Complaint does not state specifically in what capacity Plaintiff is suing the individually named Defendant officers.  The parties agree that Plaintiff has asserted claims against the individual Defendants in their official capacities, but Defendants argue that Plaintiff has not raised any individual capacity claims against them.  Mot. for Summ. J. [32] at 1-2; Mem. in Supp. of Mot. for Summ. J. [33] at 1, 8.

The United States Supreme Court has recognized that "[i]n many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). "'The course of proceedings' in such cases typically will indicate the nature of the liability sought to be imposed." *Id.* (quoting *Brandon v. Holt*, 469 U.S. 464, 469 (1985)).

While the Complaint is not entirely clear, Plaintiff's subsequent pleadings indicate that he is suing the officers in their individual as well as in their official capacities.  For example, in a Motion to Dismiss Individual Defendant Douglas

McBride [13] filed by Plaintiff on July 17, 2014, Plaintiff sought dismissal of McBride from this lawsuit "in both his official and individual capacities under which he was sued."  Mot. to Dismiss [13] at 1.  Moreover, while Defendants argue that the officers were not sued in their individual capacities, they alternatively argue that, "to the extent that Plaintiff's Complaint may be construed as against the individual officers in their individual capacities," Defendants Carter, Gulledge, Grob, and Roe are entitled to qualified immunity.  Mem. in Supp. of Mot. for Summ. J. [33] at 8-9.

Based on the foregoing, the Court is of the view that the "course of proceedings" in this case indicates that Plaintiff is suing the officers in both their individual and official capacities.  *Graham*, 473 U.S. at 167 n.14.  The Court must therefore consider the individual Defendants' entitlement to qualified immunity in resolving Defendants' Motion for Summary Judgment.

B.   Defendants' Motion to Strike [42] and Plaintiff's Motion for Leave of Court [43]

Plaintiff's Supplemental Response [41] was an unauthorized pleading filed without prior leave of Court.  However, having reviewed the Supplemental Response [41], the Court's disposition of Defendants' Motion for Summary Judgment [32] would not change regardless of whether the Court considers this pleading.  Defendants' Motion to Strike [42] and Plaintiff's Motion for Leave of Court [43] to accept Plaintiff's Supplemental Response [41] are therefore moot.

C.     Defendants' Motion for Summary Judgment [32]

1.     Relevant Legal Standards

       a.     Summary Judgment and Qualified Immunity

Rule 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact.  *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).  "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Royal v. CCC&R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.  *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party.  *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).  In general, a defendant

bears the burden of proving any affirmative defense.  *Crescent Towing & Salvage Co. v. M/V Anax*, 40 F.3d 741, 744 (5th Cir. 1994).

Individual Defendants Carter, Gulledge, Grob, and Roe assert qualified immunity from liability.[4]  Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "[T]he usual summary judgment burden of proof is altered in the case of a qualified immunity defense."  *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001)).  "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Michalik*, 422 F.3d at 262).

Although all inferences are drawn in a plaintiff's favor, "[t]he plaintiff bears the burden of negating qualified immunity . . . ."  *Id.*  "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are

---

[4]  As to Plaintiff's Fourth Amendment excessive force claim, Defendants have conceded that "Plaintiff has presented evidence of a fact question as to the actions of Officers Randy Vinson and John Rhodes only."  Mot. for Summ. J. [32] at 2.  Defendants therefore do not seek summary judgment based upon qualified immunity as to Individual Defendants Vinson and Rhodes.

insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). "The court has no duty to search the record for material fact issues." *RSR Corp.*, 612 F.3d at 858 (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). "Rather, the party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *Id.* (citing *Ragas*, 136 F.3d at 458).

A two-pronged inquiry informs the qualified immunity analysis. *Rockwell v. Brown*, 664 F.3d 985, 990-91 (5th Cir. 2011) (citation omitted). The first prong concerns "whether an official's conduct violated a constitutional right of the plaintiff" while the second asks "whether that right was clearly established at the time of the violation." *Id.* at 991 (citation omitted). "[A] court may conduct the two-pronged qualified immunity inquiry . . . in any sequence." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). A court must "examine each individual's entitlement to qualified immunity separately." *Carroll v. Ellington*, 800 F.3d 154, 174 (5th Cir. 2015) (quoting *Meadours v. Ermel*, 483 F.3d 417, 422 (5th Cir. 2007)).

b.    <u>Excessive Force Under the Fourth Amendment</u>

To establish a Fourth Amendment excessive force claim, "a plaintiff must first show that she was seized. Next she must show that she suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Carroll v. Ellington*, 800 F.3d 154, 173 (5th Cir. 2015) (quoting *Flores v. City of Palacios*, 381 F.3d 391,

396 (5th Cir. 2004)).  This is the same analysis employed when considering a convicted prisoner's claim for excessive force under the Eighth Amendment. *Kitchen v. Dallas Cty.*, 759 F.3d 468, 477 (5th Cir. 2014).[5]

In assessing the reasonableness of the use of force, a court must give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Carroll*, 800 F.3d at 173  (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id.* (quoting *Rockwell*, 664 F.3d at 991).  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Id.* at 173-74 (quoting *Graham*, 490 U.S. at 396-97).

To the extent that Plaintiff's claims may be predicated upon a theory of bystander liability, "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983."  *Id.* at 177 (quoting *Hale v. Townley*, 45

---

[5]  The Complaint references the Fourth and Fourteenth Amendments, but it appears that Plaintiff may no longer have been considered a pretrial detainee at the time of the incident in question, as Plaintiff had been convicted of the charges when Judge Rath ordered that he be arrested.  The parties have not addressed this issue in their briefing. However, because a pretrial detainee's and a convicted prisoner's claims for excessive force are subject to the same analysis, *Kitchen*, 759 F.3d at 477, the result here remains the same.

-14-

F.3d 914, 919 (5th Cir. 1995)).  To support such a claim, a plaintiff must show that the officer "(1) kn[ew] that a fellow officer [was] violating an individual's constitutional rights; (2) ha[d] a reasonable opportunity to prevent the harm; and (3) cho[se] not to act."  *Id.* (quoting *Kitchen*, 759 F.3d at 480).

2.   <u>Analysis</u>

      a.   <u>Plaintiff's Federal § 1983 Individual Capacity Claims Against Carter, Gulledge, Grob, and Roe</u>

      (i)   <u>Gulledge, Grob, and Roe</u>

Plaintiff has not submitted any competent summary judgment proof indicating that Gulledge, Grob, or Roe affirmatively participated in the acts that caused Plaintiff's alleged constitutional deprivations.  Nor has Plaintiff presented any competent summary judgment evidence that any of these officers knew that a fellow officer was violating his constitutional rights, had a reasonable opportunity to prevent such harm, and chose not to act.  *See Carroll*, 800 F.3d at 177.  It is impossible for the Court to ascertain from simply viewing the Courtroom Video and Cell Phone Video which, if any, of the officers in the courtroom and hallway were Gulledge, Grob, and Roe, and Plaintiff has not submitted any other evidence or explanation in his brief to assist the Court in making such a determination.  Even if these officers were present at some point in the courtroom or hallway, Plaintiff has not presented any competent summary judgment proof to identify at what times these three officers were present during the events in question and what alleged acts of excessive force, if any, occurred during the time they were present.

Plaintiff's Response does not discuss these three individual officers' actions separately.

Plaintiff "bears the burden of proving that a government official is not entitled to qualified immunity." *Michalik*, 422 F.3d at 258 (citation omitted). Based on the record before the Court, Plaintiff has not carried his burden of creating a material fact question regarding Gulledge's, Grob's, or Roe's individual liability under § 1983.  Gulledge, Grob, and Roe are entitled to summary judgment on Plaintiff's federal claims against them in their individual capacities.

    (ii)   <u>Carter</u>

The evidence reflects that Carter assisted McBride and Vinson in removing Plaintiff from the courtroom.  Carter "was forced to remove Smith from the courtroom by dragging him out."  Carter's Statement [32-4] at 1.  According to Carter, after Plaintiff attempted to head-butt him, "Carter grabbed Smith under the jaw bone applying pressure to the hypoglossal nerve and stood him up to his feet and placed him against the wall."  *Id.*  Plaintiff has presented contrary evidence to argue that he was not resisting the officers, and did not take any physical action towards them.  Dep. of Cuppie Day [37-2] at 61, 121.

When assessing qualified immunity at the summary judgment stage, the Court must view the evidence presented in a light most favorable to Plaintiff.  *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) (citation omitted).  Based on the foregoing, genuine disputes of material fact exist as to whether the force employed by Carter was objectively excessive and clearly unreasonable.  To the

extent that Defendants seek summary judgment on Plaintiff's federal § 1983 claims against Carter in his individual capacity, the Motion will be denied.

       b.    <u>Plaintiff's Federal § 1983 Claims Against the City and Officers Gulledge, Grob, Roe, Vinson, Carter, and Rhodes in Their Official Capacities</u>

       (i)    <u>Claims Against the City</u>

A city cannot be held liable under § 1983 on a theory of respondeat superior. *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010); *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008). "To establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal policy.'" *Valle*, 613 F.3d at 541 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). To this end, "[a] plaintiff must identify: (1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Id.* at 541-42 (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)). These three elements "are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Plaintiff has not pointed to any official written or otherwise specially articulated policy to support his claims. Instead, Plaintiff advances two alternative theories of municipal liability: ratification and pattern or practice.

(a)     Ratification

Plaintiff argues that the City of Wiggins' Chief of Police, Matt Barnett ("Chief Barnett"), has given sworn testimony as a Federal Rule of Civil Procedure 30(b)(6) deponent for the City, affirming the actions of the City's officers.  Resp. [37] at 2. Plaintiff essentially argues that Chief Barnett, as a purported final policymaker, has ratified the actions of the officers, making such actions chargeable against the City.  *Id.*

> The Supreme Court has explained that

> when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies.  If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion) (emphasis in original).

The first question is whether Chief Barnett was a final policymaker for the City of Wiggins Police Department.  *See id.*  Whether a particular official has final policymaking authority is a question of state law.  *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 737 (1989) (citing *Praprotnik*, 485 U.S. at 123).  Plaintiff has cited no authority under Mississippi law for the proposition that Chief Barnett was a final policymaker for the City of Wiggins.  Nor has Plaintiff presented any evidence that the City of Wiggins delegated final policymaking authority to Chief Barnett.

Chief Barnett testified that he was not the final policymaker with respect to the policies of the City of Wiggins Police Department:

Q. All right.  Would it be fair to say, Chief, that as the head of the Wiggins Police Department that you are a policymaker for your particular department?

A. We make policy and it's approved by the Board of Alderman [sic].

Q. All right.

A. Draft policy and they approve it.

\* \* \*

Q. And is it the City's position in regards to all of that that I just prefaced with those questions that of the chief of police is a policymaker for the City of Wiggins Police Department?

A. We present policy that we want to implement and the Board of Alderman [sic] approve it.

City's Rule 30(b)(6) Dep. [37-3] at 46, 83.

In his Supplemental Response, Plaintiff appears to argue that, because Chief Barnett was testifying as a Rule 30(b)(6) designee in a deposition on behalf of the City, he was speaking on behalf of the City, which is "the ultimate policy maker [sic] here . . . ."  Pl.'s Suppl. Resp. [41] at 2.  Plaintiff cites no legal authority for this proposition.  Nor is the Court persuaded that a municipality's Rule 30(b)(6) deposition designee becomes automatically transformed into a final policymaker for purposes of municipal liability under 42 U.S.C § 1983.  *See, e.g., Heinrich v. City of Casper*, 526 F. App'x 862, 863 (10th Cir. 2013) ("A city's Rule 30(b)(6) designee is surely charged with *knowledge* of municipal policy and should be able to *report* the contents of that policy.  A Rule 30(b)(6) designee's testimony is, as well, surely *admissible* against the city at trial.  But none of that necessarily means the designee is authorized to *set* or *change* policy.") (emphasis in original).

Moreover, even if the Chief of Police is a final policymaker for the City, Plaintiff has not explained how Chief Barnett's statements in his deposition

regarding the officers' actions would constitute ratification for purposes of imposing municipal liability. "Good faith statements made in defending complaints against municipal employees do not demonstrate ratification." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010) (citing *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 852 (5th Cir. 2009)). "A 'policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality.'" *Id.* (quoting *Peterson*, 588 F.3d at 848).

Indeed, Fifth Circuit "precedent has limited the theory of ratification to 'extreme factual situations.'" *Peterson*, 588 F.3d at 848 (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)). In *Peterson*, an excessive force case, the plaintiff argued that the city was liable because its police chief ratified the officers' conduct when the chief determined, after investigation, that the officers' conduct complied with the department's policies. *Id.* After a knee strike by an officer in that case, the plaintiff had experienced a ruptured femoral artery requiring two surgeries and a two-week hospital stay. *Id.* at 844.

In resolving whether the facts in *Peterson* constituted an "extreme factual situation" to which the theory of ratification could apply, the Fifth Circuit discussed two of its previous opinions. *Id.* at 848. In *Grandstaff v. City of Borger*, the Fifth Circuit found "ratification in a case in which officers 'poured' gunfire onto a truck and killed [an] innocent occupant." *Peterson*, 588 F.3d at 848 (citing *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985)). By contrast, in *Snyder v. Trepangnier*, the Fifth Circuit "refus[ed] to find ratification in [a] case in which [an] officer shot

[a] fleeing suspect in the back." *Peterson*, 588 F.3d at 848 (citing *Snyder*, 142 F.3d at 798). Based on this authority, the Fifth Circuit held that the facts in *Peterson* did not present a factual situation so extreme as to justify applying ratification as a grounds for municipal liability. *Id.*

Viewing all facts and inferences in the light most favorable to Plaintiff, he has not shown that this case presents such an "extreme factual situation" that the theory of ratification should apply. *See id.* While Plaintiff attempts to cast the actions of the officers as extreme, the record reflects that the force applied in this case was more akin to that used in *Peterson*, and lesser than that employed in *Grandstaff* and *Snyder*. *Peterson*, 588 F.3d at 844; *Snyder*, 142 F.3d at 798; *Grandstaff*, 767 F.2d at 165. Even if Chief Barnett is a final policymaker under Mississippi law, Plaintiff has not demonstrated the existence of an official policy or custom attributable to the City based upon a theory of ratification. *See Peterson*, 588 F.3d at 848.

    (b)    <u>Pattern or Practice</u>

Plaintiff also contends that there was "a well known and long existing pattern, practice and custom of harassment, abuse and injury of persons with a minority status by members of the Wiggins Police Department that has become an unofficial policy and custom." Resp. [37] at 2 (quoting Aff. of Ray Boggs [37-4] at 2). Official policy may "arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson*, 588 F.3d at 847 (quoting *Piotrowski*, 237 F. 3d at 579). "A customary

policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Zarnow*, 614 F.3d at 169 (citing *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984)).

"It is thus clear that a plaintiff must demonstrate 'a pattern of abuses that transcends the error made in a single case.'" *Peterson*, 588 F.3d at 850-51 (quoting *Piotrowski*, 237 F.3d at 582)).   "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question.'" *Id.* at 851 (quoting *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).  "A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Id.* (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)).  In determining whether a sufficient pattern exists, a court must look to the size of the police department or how many arrests were made in the relevant time period.  *Id.* at 851.  Plaintiffs seeking to withstand summary judgment must provide sufficient evidence "to provide  context that would show a pattern of establishing a municipal policy."  *Id.*

Plaintiff has not submitted competent summary judgment evidence to demonstrate a pattern of prior constitutional violations bearing sufficient resemblance to the events at issue in this case.  *See id.*  Plaintiff relies upon the Affidavit of Ray Boggs and the testimony of Day.  Boggs is "employed by the Stone County Sheriff's Department in the Criminal Investigation Department (CID)

-22-

holding the rank of Lieutenant . . . ." Aff. of Ray Boggs [37-4] at 1. Boggs and Day both reference only two other specific incidents, one involving a Daphine Alford and another involving an Elaine Breland. *See, e.g., id.*; Dep. of Cuppie Day [37-2] at 23-29, 128.[6] Plaintiff also attaches to his Memorandum [38] a newspaper article from the Stone County Enterprise entitled "Residents Complain of Police Harassment" [38-1] by the Wiggins Police Department.

The Alford and Breland incidents occurred after the incident involving Plaintiff. The events involving Ms. Alford occurred on January 24, 2013, two days after Plaintiff's incident. City's Rule 30(b)(6) Dep. [37-3] at 104. The incident regarding Ms. Breland occurred in October 2014, over a year later. *Id.* at 89. The newspaper article upon which Plaintiff relies was published on February 13, 2013, and referenced a City of Wiggins Board of Aldermen meeting which apparently occurred on February 5, 2013, without reference to specific dates of any of the purported incidents.[7] Article [38-1] at 1-2.

---

[6] Boggs also avers that, in his opinion, there exists "a well known and long existing pattern, practice and custom of harassment, abuse and injury of persons with a minority status by members of the Wiggins Police Department that has become an unofficial policy and custom." Aff. of Ray Boggs [37-4] at 1. However, whether the complaints on which a plaintiff relies are sufficient to establish a pattern of excessive force that can be said to represent official policy presents a legal question for the Court. *Peterson*, 588 F.3d at 850. Expert opinions on legal questions are inadmissible. *See Estate of Sowell v. United States*, 198 F.3d 169, 171-72 (5th Cir. 1999). Boggs' conclusory statement is insufficient to carry Plaintiff's summary judgment burden.

[7] One incident reported in the article, related by a Reverend Leonard Galloway, apparently occurred "more than a year" before the article was written. Article [38-1] at 1. However, in that incident, Galloway was stopped by police while driving and was "asked repeatedly how much he had to drink, even after telling the officer he did not drink and was coming from a church function." *Id.* There is no indication of any use of force, much less excessive force, by the officer. Plaintiff has not shown that Galloway's incident is sufficiently similar to his own.

Even if the evidence offered by Plaintiff could be presented in a form that would be admissible in evidence, *see* Fed. R. Civ. P. 56(c)(2), Plaintiff has not presented sufficient evidence to demonstrate a pattern of constitutional violations bearing sufficient resemblance to the specific violation in question in this case. Moreover, a pattern requires "'sufficiently numerous *prior* incidents,' as opposed to 'isolated incidents.'" *Peterson*, 588 F.3d at 851 (quoting *McConney*, 863 F.2d at 1184) (emphasis added). Even assuming the Alford and Breland incidents were sufficiently factually similar to Plaintiff's, Plaintiff has identified only these two other specific incidents besides his own. Both incidents occurred over the course of a one year and eight month period after the incident involving Plaintiff. Plaintiff offers no competent summary judgment evidence demonstrating any context regarding the size of the City of Wiggins Police Department or the number of arrests during the relevant time period. *See id.* Plaintiff has not satisfied his summary judgment burden of establishing a pattern or practice of excessive force as a basis for imposing municipal liability. *See id.*

In sum, Plaintiff has not shown that a policy, practice, or custom of the City was the moving force behind any constitutional violation that may have occurred in this case. Plaintiff's claims against the City under federal law will be dismissed.

(ii)   <u>Claims Against All Officers in Their Official Capacities</u>

A suit against officers in their official capacities "is, in essence, a suit against the municipality," such that the analysis as to the municipality "applies equally to the [officers] sued in their official capacities." *Brumfield*, 551 F.3d at 331 n.9 (citing

-24-

*Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005)).  Because Plaintiff's § 1983 claims against the City cannot withstand summary judgment, his official capacity claims against the officers under federal law will also be dismissed.  *See id.*

       c.     <u>Plaintiff's Claims Against All Defendants Under State Law</u>

       Defendant argues that, to the extent Plaintiff's state law claims fall within the ambit of the Mississippi Tort Claims Act, Mississippi Code § 11-46-1, *et seq.* ("MTCA"), those claims are precluded by the MTCA.  To the extent that Plaintiff's claims fall outside the scope of the MTCA, Defendant maintains that the applicable statute of limitations bars them.

       The MTCA "provides the exclusive civil remedy against a governmental entity and its employees for acts or omissions which give rise to a suit."  *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 444 (5th Cir. 2015) (quoting *City of Jackson v. Sutton*, 797 So. 2d 977, 980 (Miss. 2001)).  "The MTCA provides the following general waiver of sovereign immunity:  '[T]he immunity of the state and its political subdivisions from claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment is hereby waived . . . .'"  *Id.* (quoting Miss. Code Ann. § 11-46-5(1)).  "However, that waiver is subject to various exceptions."  *Id.*

       Defendants contend that "Plaintiff's state law claims of assault, battery, and intentional infliction of emotional distress are barred by the [MTCA]."  Mem. in Supp. of Mot. for Summ. J. [33] at 10.  According to Defendants, because Plaintiff

was purportedly engaged in criminal activity at the time he was removed from the courtroom, his claims are foreclosed by Mississippi Code § 11-46-9(1)(c).  *Id.* "[I]rrespective of Plaintiff's criminal activity, the individual officers' actions in removing Plaintiff from the courtroom, standing him up, forcing him against a wall, and handcuffing his left hand to his belt loop did not amount to reckless disregard of Plaintiff's safety."  *Id.* at 11.

Defendants further maintain that the City cannot be held liable under state law for the officers' actions because any "claims for assault, battery, and intentional infliction of emotional distress fall outside what is allowable against a municipality under the MTCA" because the officers would not be "acting within the course and scope of employment."  *Id.* at 11-12 (quoting Miss. Code Ann. § 11-46-5(1); citing *Cockrell v. Pearl River Valley Water Supply Dist.*, 865 So. 2d 357, 361 (Miss. 2004); *McBroom v. Payne*, No. 1:06cv1222-LG-JMR, 2010 WL 3942010, at *9 (S.D. Miss. Oct. 6, 2010); *Tyson v. Jones Cty., Miss.*, No. 2:07cv75-KS-MTP, 2008 WL 4602788, at *7-8 (S.D. Miss. Oct. 15, 2008)).  Under this reasoning, Plaintiff's state law claims against the officers fall outside the scope of the MTCA and are barred by the one-year statute of limitations set forth at Mississippi Code § 15-1-35.  Reply [40] at 8-9.

Plaintiff responds that he was not involved in criminal activity at the time of the incident and that the officers' conduct rose to the level of reckless disregard. Resp. [37] at 3-4.  Plaintiff offers no response to the remainder of Defendants' arguments for dismissal of the state law claims.

(i) <u>Plaintiff's State Law Claims Against the City and the Individual Defendants in Their Official Capacities Under the MTCA</u>

The MTCA's waiver of sovereign immunity of a governmental entity "does not apply to torts committed by an employee acting *outside* the course and scope of employment." *Oliver v. Noxubee Cty. Tax Dep't*, 200 F.3d 815, 1999 WL 1095468, at *3 (5th Cir. 1999) (emphasis in original) (citing Miss. Code Ann. § 11-46-5). "A governmental employee who commits a tort with malicious intent, or a tortious offense constituting a criminal offense other than a traffic violation, may be held personally liable for that act, and the governmental entity employing him or her is absolved of liability." *Green v. City of Moss Point, Miss.*, 495 F. App'x 495, 500 (5th Cir. 2012) (citing Miss. Code Ann. § 11-46-5(2)).

Claims for assault, battery, and intentional infliction of emotional distress "constitute[] some form of malice or criminal offense." *McBroom*, 2010 WL 3942010, at*9. As this Court has previously observed, "even if plaintiff was able to provide sufficient evidence for a jury to conclude that [officers] improperly beat him once he was handcuffed, the law is clear such actions would constitute criminal acts . . . and [the entity] is immune from liability for such criminal acts by virtue of Miss. Code Ann. § 11-46-5(2) . . . . " *Tyson*, 2008 WL 4602788, at *8. Plaintiff's claims for assault, battery, and intentional infliction of emotional distress therefore "cannot be considered 'within the course and scope of employment' under the [MTCA]." *McBroom*, 2010 WL 3942010, at *9; *see also Green*, 495 F. App'x at 500.

Neither the City nor the individual Defendants in their official capacities would be liable to Plaintiff for any claims for assault, battery, or intentional infliction of emotional distress.  *See* Miss. Code Ann. §§ 11-46-5(2) & 11-46-7(2); *Oliver*, 2009 WL 1095468, at *3.  Plaintiff's state law claims for assault, battery, and intentional infliction of emotional distress against the City and the individual Defendants in their official capacities will be dismissed.

    (ii)    <u>Plaintiff's State Law Claims Against the Individual Defendants in Their Individual Capacities</u>

Under the MTCA, "no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties."  Miss. Code Ann. § 11-46-7(2).  The Court has already determined that Plaintiff's state law claims for assault, battery, and intentional infliction of emotional distress would necessarily fall outside the course and scope of the individual Defendants' employment with the City because they "constitute[] some form of malice or criminal offense."  *McBroom*, 2010 WL 3942010, at *9.  In this regard, Defendants in their individual capacities have invoked the one-year statute of limitations set forth at Mississippi Code § 15-1-35, as a bar to these claims.  Reply [40] at 8.[8]

The statute of limitations and tolling provisions of the MTCA do not apply to claims falling outside the scope of the MTCA.  *Gilmer v. Towbridge*, No. 3:08cv136-

---

[8]  This portion of Defendants' Reply [40] constitutes a new argument presented for the first time in a Reply.  However, Plaintiff has submitted a Supplemental Response [41] after the Reply and chose not to address this argument.  Because Plaintiff has had the opportunity to respond, the Court may consider the individual Defendants' statute of limitations defense on its merits.

TSL-JCS, 2009 WL 4113711, at *3 (S.D. Miss. Nov. 23, 2009) (citing *Sowers v. Darby*, No. 2:07CV11-SA-SAA, 2009 WL 742730 (N.D. Miss. March 17, 2009)). Claims for assault, battery, and intentional infliction of emotional distress are subject to the one-year statute of limitations found at Mississippi Code § 15-1-35. Miss. Code Ann. § 15-1-35; *Reeg v. Keel*, 174 So. 3d 309, 312 (Miss. 2015); *Trustmark Nat'l Bank v. C. Brent Meador*, 81 So. 3d 1112, 1118 (Miss. 2012).

Plaintiff's assault and battery claims arise solely out of the incident which occurred on January 22, 2013, in and around the Municipal Courtroom.  Compl. [1] at 18-21.  Plaintiff's intentional infliction emotional distress claim, on the other hand, arguably stems not only from the incident in and around the courtroom, but also from alleged harassment of Plaintiff "and his immediate family after he formally complained . . . ."  *Id.* at 21.  To the extent that Plaintiff's assault, battery, and intentional infliction of emotional distress claims arise out of the January 22, 2013, incident, they are clearly time-barred.  Plaintiff filed his Complaint [1] over one year later, on January 24, 2014, beyond the time permitted by Mississippi Code § 15-1-35.  These claims will be dismissed.

To the extent Plaintiff's claim for intentional infliction of emotional distress relates to any alleged subsequent harassment, the question presented is when this claim accrued.  An intentional infliction of emotional distress claim generally accrues on the date upon which the intentional acts forming the basis of the claim occurred.  *CitiFinancial Mortg. Co. v. Washington*, 967 So. 2d 16, 19 (Miss. 2007).

The Complaint charges that, after Plaintiff notified the City of his abuse by the officers, Defendants harassed and intimidated Plaintiff and his family. Compl. [1] at 23. However, "allegations in a complaint . . . are assertions, not evidence" and are insufficient to withstand a motion for summary judgment pursuant to Rule 56. *Collins v. Jackson Public School Dist.*, 609 F. App'x 792, 795 (5th Cir. 2015) (citing Fed. R. Civ. P. 56). Simply put, "pleadings are not summary judgment evidence." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

Plaintiff has not responded to Defendants' statute of limitations argument. Nor has Plaintiff directed the Court to any competent summary judgment evidence to demonstrate what, if any, harassment occurred, and when this alleged harassment took place. Defendants' position is that all of Plaintiff's state law claims against the individual Defendants in their individual capacities accrued on January 22, 2013, and as such are barred by the one-year statute of limitations. Defendants have met their initial summary judgment burden in this regard. Plaintiff has not sufficiently rebutted Defendants' Motion with any competent summary judgment evidence to create a fact question as to when any intentional infliction of emotional distress claim related to the alleged harassment accrued.

Moreover, Plaintiff has not pointed to any record evidence reflecting which of the named individual Defendants, if any, actually participated in any alleged harassment. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (quoting *Ragas v.*

*Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Plaintiff's intentional infliction of emotional distress claim cannot withstand summary judgment and will be dismissed.

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Defendants' Motion to Strike [42] and Plaintiff's Motion for Leave of Court [43] should be denied as moot, and that Defendants' Motion for Summary Judgment [32] should be granted in part and denied in part.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendants' Motion to Strike [42] and Plaintiff's Motion for Leave of Court [43] are **DENIED AS MOOT**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment [32] is **GRANTED IN PART and DENIED IN PART**. The Motion is **GRANTED** such that Defendants Richard Gulledge, Aaron Grob, and Melanie Roe are entitled to qualified immunity as to Plaintiff's individual capacity claims against them under federal law pursuant to 42 U.S.C. § 1983, and these claims against Defendants Richard Gulledge, Aaron Grob, and Melanie Roe are **DISMISSED WITH PREJUDICE**. The Motion is also **GRANTED** such that Plaintiff's claims against the City of Wiggins, Mississippi, and all individual Defendants in their official capacities under federal law pursuant to 42 U.S.C. § 1983 and Plaintiff's claims against all Defendants under state law are **DISMISSED WITH PREJUDICE**. The Motion is **DENIED** with respect to Plaintiff's individual

capacity claims against Randy Vinson, Michael Carter, and John Rhodes under federal law pursuant to 42 U.S.C. § 1983.  Defendants City of Wiggins, Mississippi, Richard Gulledge, Aaron Grob, and Melanie Roe are **DISMISSED** from this civil action, and Plaintiff's individual capacity claims against Randy Vinson, Michael Carter, and John Rhodes under federal law pursuant to 42 U.S.C. § 1983 will proceed.

 **SO ORDERED AND ADJUDGED**, this the 9th day of November, 2015.

 *s/ Halil Suleyman Ozerden*
 HALIL SULEYMAN OZERDEN
 UNITED STATES DISTRICT JUDGE